CAROLINA R. MASON v. THOMAS A. RODRIGUEZ ET AL.

Decided January 27, 1909.

**1.—Foreign Will—Record in this State—Effect—Statute Construed.**

The filing and recording in this State of a copy of a foreign will under the provisions of art. 5353, Rev. Stats., has no effect except to constitute the will a muniment of title for the devisee therein, and does not empower the executor of said will to act as such in this State. In order to acquire such power and authority it is necessary for the will to be probated under the provisions of art. 1909, which provides for the probate of copies of wills the originals of which have been probated in other States.

**2.—Same—Contest—Jurisdiction.**

No contest can be had of a will filed and recorded under the terms of art. 5353, Rev. Stats., unless such will in some manner disposes of land in this State, and the contest must take place in the county in which the land is situated.

**3.—Will—Mental Incapacity—Evidence.**

In an action to set aside a will because of the want of mental capacity to execute the same, evidence considered, and held sufficient to support a judgment annulling the will.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*C. C. Clamp* and *Seth S. Searcy,* for appellant.

*Frank H. Wash,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is a suit upon the part of appellees to set aside and render of no effect the purported last will and testament of Mrs. Maria de Jesus Rodriguez, in which appellant was made the sole devisee. The will was executed on April 23, 1902, in Loudon County, Virginia, and after the death of the testatrix was, on October 9, 1905, duly probated in the county and State named, and on October 20, 1905, a certified copy of the will, together with the certificate of probate in Virginia, was filed with the county clerk of Bexar County, Texas, and was duly recorded as required by law. On November 2, 1905, a contest of the will by appellees was filed in the County Court of Bexar County, which was answered by appellant. On July 3, 1906, the county judge annulled and set aside the will, and an appeal was taken to the District Court. On a trial in that court the will was decreed to be "null and void and of no effect as a will or testament of the said Maria de Jesus Rodriguez, because of the mental incapacity at the time said instrument purports to have been executed of the said Maria de Jesus Rodriguez." The contention of appellant in this court is that the decree of the District Court is not sustained by the evidence, but is contrary to its great preponderance.

The will was contested under the provisions of article 5353, Revised Statutes, which, after prescribing the method of probating and recording a copy of the will in Texas conveying or in any manner disposing of land in this State, which has been duly probated in any State of the United States or Territories, provides that at any time within four years from the date of the record of such will in this State its validity may be contested as the original might have been. The article in question was enacted for the purpose of allowing a person owning land by virtue of a will duly probated in any other State or Territory of the United States, to fix and preserve a muniment of his title without the formality of seeking the aid of the County Court for probate of the will, as was required in article 1909, Revised Statutes. The filing and record of a copy of the will under the provisions of article 5353 had no effect except to constitute the will a muniment of title for the devisee therein and had no effect in empowering the executrix to act as such in Texas, but in order to have obtained such power and authority it would have been necessary for the will to have been probated under the terms of article 1909, which provides for the probate of copies of wills the original of which have been probated in other States. This leads up to the proposition that no contest could be had of a will filed and recorded under the terms of article 5353, unless such will conveyed or in some manner disposed of land in this State and in the county in which the real estate is situated. In other words, there could be no jurisdiction to attack the

will in this case unless it appeared that there was land conveyed or disposed of by it situated in Bexar County, because the will was filed under the terms of article 5353 as a muniment of title, and such filing and record was a nullity unless the title to land in Bexar County was affected by it. There is nothing stated in the pleadings of either party as to land in Bexar County, or for that matter in Texas, being affected by the filing and record of the copy of the will sought to be contested, and the testimony is not very satisfactory on the subject, as will appear from a statement of the facts on the subject which follows, and which determined us in recognizing the jurisdiction of the lower courts.

Selig Deutschman swore: "She had three places in San Antonio. . . She was always complaining about not getting the rent. . . . She wanted to give me a lot next to her home, but I would not take it. . . . She gave J. M. Taylor a power of attorney and he sold two of her houses, and has had charge of them up to the time the property was put in the hands of a receiver when the contest was filed in 1905. The only property that Mrs. Rodriguez left is not much more than the taxes due on it." J. M. Rodriguez, a son of the testatrix, testified that she wanted to mortgage a piece of land when she only had an undivided interest in it. The testimony of J. M. Taylor, who sold two pieces of the property, indicates that there was some of it left when Mrs. Rodriguez died. This is about all the testimony on the point, and it is regretable that such a point should be allowed by parties to obtrude itself into a case.

Out of deference to the judgment of the court on the facts, which, in the absence of a jury, must meet with the same deference and consideration that is accorded the verdict of a jury, we find that the purported testatrix, Mrs. Maria de Jesus Rodriguez, was at the time of her death about 94 years of age; that in 1899 she was very feeble in mind and body and continued in that state until the time of execution of the will. She was suffering at that time with senile dementia, from which there is no recovery and which is progressive in its tendency and eventually completely destroys the mind. The condition of Mrs. Rodriguez was such in 1899 and 1900 that it would appear improbable that her mind or body could have improved, but that both were hastening to dissolution. Dr. Berry swore: "I knew Mrs. Rodriguez. When I knew her she was 85 or 90 years old. I treated her on several occasions. I gave a certificate in 1899 as to her sanity. I examined her. She was suffering at the time from senile dementia, which is a weakened condition of the brain from excessive age, and the condition is a progressive one with age. As age progresses the mental condition becomes worse. My impression was, when I saw what her mental condition was, that she was not able to care for herself physically, and could not care for her business affairs." The witness testified that he had given a second certificate in which he stated that Mrs. Rodriguez was mentally sound, but said it was done in order that Mrs. Rodriguez would be discharged by the County Court, which had appointed a guardian of her person and estate, and could go to Virginia with appellant. He stated that her condition had improved, but said further: "She had not recovered from senile dementia, as a person never

recovers from that. I do not believe it possible that her mind was in such condition that she was able to make a proper will, or to remember her property and the nature of it, or such people as would naturally share in its benefits. . . . I gave this certificate because I had examined her prior to giving the certificate and found her physical and mental condition improved, but I am positive she was suffering from senile dementia, and senile dementia gets worse with increasing age." Dr. Paschal testified: "I am a practicing physician and have been for thirty-three years. I have had a few cases of what is known as senile dementia. This is generally caused from a hardening of the brain cells, caused from old age. As the patient gets older he gets worse. When patients are afflicted with senile dementia, and their minds gone, they are not in a condition to take care of their property and remember where it is, and who would likely be the beneficiaries, and look after their own affairs." Dr. Berry, being recalled, testified: "At the time I gave the certificate in 1900 I did not think that Mrs. Rodriguez was in a condition to have a disposing mind and memory, nor that she would remember anything. She was suffering from the same senile condition, but had improved physically very much, and the certificate was given at Mrs. Mason's request." Several witnesses swore to the condition of Mrs. Rodriguez in 1899, and it all tended to show that she was very feeble and childish and that she was incapable of caring for herself.

If Mrs. Rodriguez was in the condition represented by the witnesses in 1899, it would have been miraculous for her at her advanced age, many years beyond that usually allotted to the human race, to have become so renewed and rejuvenated by 1902 as to be of mental capacity sufficient to execute a will. Proof of her mental condition in 1899, under the circumstances, was proof that she was in no better condition in 1902. The judgment will be affirmed.

*Affirmed.*